IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMERICAN ALLIANCE FOR EQUAL RIGHTS, RICHARD FISHER, and PHILLIP ARONOFF, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF CHICAGO; BALLY'S CHICAGO INC.; BALLY'S CHICAGO OPERATING COMPANY, LLC; and SEAN BRANNON, STEPHAN FERRARA, DIONNE HAYDEN, and CHARLES SCHMADEKE, in their official capacity as Members of the Illinois Gaming Board, <br><br> Defendants. | ) ) ) ) ) ) ) No. 25-cv-1017 ) ) Hon. Jeffrey I. Cummings ) ) ) ) ) ) ) ) |

**CITY OF CHICAGO'S MEMORANDUM OF LAW IN SUPPORT OF ITS RULE 12(B)(1) AND (6) MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Plaintiffs American Alliance for Equal Rights ("AAER"), Richard Fisher, and Phillip Aronoff challenge an Initial Public Offering ("IPO") by Bally's Chicago, Inc. of stock in Bally's Chicago Casino and Resort, alleging that by limiting the stock ownership opportunity to minorities and women, the government and corporate defendants in this case violated various civil rights laws. As Defendants Bally's Chicago Inc. and Bally's Chicago Operating Company LLC (together "Bally's") explain in their Motion to Dismiss, Plaintiffs' claims under 42 U.S.C. §§ 1981, 1982, 1983, and 1985 suffer from various pleading defects and should be dismissed for those reasons. Defendant City of Chicago raises three additional bases for dismissal herein. First, as a threshold matter, AAER's claims should be dismissed because it lacks standing. Second, Plaintiffs' section 1981, 1982, and 1983 claims against the City are all deficient because the IPO is an action taken by Bally's Chicago, Inc., a private company; it is not the conduct of a state

actor. Plaintiffs thus fail to allege that they were harmed by a City policy, as required to state a claim against the City under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690 (1978). Third, Plaintiffs' section 1985 claim against the City likewise fails to allege harm caused by a City policy, and Plaintiffs do not allege the elements of a civil rights conspiracy. Plaintiffs' claims against the City should be dismissed accordingly.

## BACKGROUND[1]

The Illinois Gambling Act, 230 ILCS 10/1 et seq., authorizes the City to issue a single casino license for a casino resort within the City. 230 ILCS 10/7(e-5)(1); Compl. ¶¶ 20-21. The Act also requires casino license applicants to provide "evidence the applicant used its best efforts to reach a goal of 25% ownership representation by minority persons and 5% ownership representation by women." 230 ILCS 10/6(a-5)(9); Compl. ¶ 23.

In 2022, Bally's Corporation was chosen as the developer for a casino in the City, and Bally's Chicago Operating Company, LLC negotiated a Host Community Agreement ("HCA") with the City. *See* Compl. ¶ 24.[2] To satisfy the Illinois Gambling Act's minority and women ownership provision, the HCA included a requirement of 25 percent minority ownership in the casino project, with minority defined to include women. HCA Ex. B, § 4.4(m); *id.*, Ex. A-9 thereto; Compl. ¶ 26. The HCA was executed on June 9, 2022. Compl. ¶ 24.

To fulfill its obligations under the HCA, Bally's Chicago, Inc. structured an IPO that made a percentage of stock in Bally's Chicago Casino and Resort available to "qualified investors," defined as women and minorities (as defined in Municipal Code of Chicago, Ill., § 2-

---

[1] Additional background is set out in Defendants Bally's Chicago Inc. and Bally's Chicago Operating Company LLC's Memorandum in Support of Rule 12(b)(6) Motion to Dismiss.

[2] The HCA, referenced in the Complaint and throughout this brief, is a judicially noticeable document publicly available at https://www.chicago.gov/content/dam/city/sites/chicago-casino/pdfs/Ballys-June-9-2022-HCA-Fully-Executed-with-Exhibits.pdf .

92-670(n)). Compl. ¶¶ 27, 32. Indications of interest were accepted in January 2025, and the IPO was scheduled to close on February 7, 2025. *Id*. ¶¶ 34-35.

Fisher and Aronoff allege that in January 2025, through their membership in AAER, they "became aware of this investment opportunity and that they could not participate." *Id*. ¶ 40. Fisher alleges that he submitted a qualification application on January 28, 2025, and was informed he did not meet the qualification criteria, while Aronoff alleges that he did not submit an application because he believed doing so would be futile. *Id*. ¶¶ 42-43.

The IPO did not close as scheduled. The registration statement for the IPO was filed with the SEC, but it did not become effective; consequently, the IPO did not close as planned, and investor deposits were refunded.[3]

Plaintiffs allege that the City, Bally's, and the members of the Illinois Gaming Board discriminated against them based on race. Count I alleges that Defendants are impairing Plaintiffs' right to make and enforce contracts, in violation of 42 U.S.C. § 1981. Compl. ¶¶ 44-60. Count II alleges that the IPO restrictions violated 42 U.S.C. § 1982, which guarantees "all citizens of the United States" the same right "enjoyed by white citizens . . . to inherit, purchase, lease, sell, hold, and convey real and personal property." *Id*. ¶¶ 61-75. Count III alleges that the City and the members of the Illinois Gaming Board violated 42 U.S.C. § 1983 and the Fourteenth Amendment's Equal Protection Clause by imposing "a racial classification upon

---

[3] *See* https://www.chicagotribune.com/2025/02/28/ballys-chicago-minority-ipo-sec-refund/ . Fed. R. Evid. 201 allows courts to take judicial notice of adjudicative facts that are "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See Schmude v. Sheahan*, 312 F. Supp. 2d 1047, 1064 (N.D. Ill. 2004) ("[I]t is routine for courts to take judicial notice of both newspaper articles and court records, among other things.").

Plaintiffs." *Id.* ¶¶ 76-96. Count V[4] alleges that the City and Bally's violated 42 U.S.C. § 1985 by "conspir[ing] to violate Plaintiffs' civil rights." *Id.* ¶¶ 97-107.

## LEGAL STANDARDS

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court must accept well-pleaded facts as true but need not accept legal conclusions or threadbare recitals of the elements of a cause of action supported by mere conclusory statements. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 12(b)(1) allows dismissal when the Court lacks subject matter jurisdiction over a plaintiff's claim. Fed. R. Civ. P. 12(b)(1). As the party asserting jurisdiction, Plaintiffs have the burden to establish that requirements for jurisdiction are met. *See Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588-89 (7th Cir. 2014). In considering a Rule 12(b)(1) motion, courts "may properly look beyond the jurisdictional allegations of the [claim] and view whatever evidence has been submitted on the issue." *Apex Dig., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009).

## ARGUMENT

Before addressing the merits of Plaintiffs' claims, this Court must consider whether it has jurisdiction to hear them. Here, AAER lacks standing because it has alleged no facts that show it has suffered a concrete injury as an organization, nor can it satisfy the associational standing test to bring suit on its members' behalf. Its claims should be dismissed.

As to Fisher and Aronoff's claims, as a municipality, the City is liable only for its conduct that results from a municipal policy. *See Monell*, 436 U.S. at 690. But Plaintiffs claim that they were harmed by being excluded from an IPO that was issued by Bally's Chicago, Inc., not the

---

[4] There is no Count IV.

City. As another court in this district has held, identical allegations about the same IPO by a different plaintiff "fail[ed] to plausibly allege that Bally's implementation of discriminatory limitations on its IPO constitute[d] state action." *Glennon v. Johnson*, No. 25-cv-1057, Dkt. 26, at 10 (N.D. Ill. Feb. 6, 2025); *see also id.* at 14 ("The City . . . cannot be held liable for the IPO because Bally's issued the IPO as a private actor."). Plaintiffs' claims against the City are subject to *Monell*'s requirements, but the action they claim harmed them—the IPO—was not a City policy, nor dictated by one. Hence, their claims against the City fail. And to the extent Plaintiffs allege that the City conspired with Bally's to violate their civil rights, Plaintiffs also fail to allege the elements of a civil rights conspiracy claim.

**I.      AAER Lacks Standing.**

AAER cannot avail itself of either organizational or associational standing. First, it lacks organizational standing because it alleges no concrete injury to itself as an organization. "Article III standing requires an injury-in-fact capable of being redressed by a favorable decision of the court." *Bond v. Utreras*, 585 F.3d 1061, 1072-73 (7th Cir. 2009) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). An "injury in fact" is an "invasion of a legally-protected interest" that is "concrete" and "particularized," affects "the plaintiff in a personal and individual way," and is "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotation marks omitted). Plaintiffs "must clearly and specifically set forth facts sufficient to satisfy" Article III. *Whitmore v. Arkansas*, 495 U.S. 149, 155-56 (1990).

An organization may assert standing on its own behalf if it has suffered a concrete injury to its activities or a drain on its resources. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). Here, AAER alleges only that it is "dedicated to ending racial and ethnic preferences." Compl. ¶ 7. This general mission is insufficient to establish organizational standing. "[A] mere 'interest in a problem,' no matter how longstanding the interest and no matter how qualified the

organization is in evaluating the problem, is not sufficient by itself to render the organization 'adversely affected' or 'aggrieved.'" *Sierra Club v. Morton*, 405 U.S. 727, 739 (1972); *see also Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587, 600-01 (2007) (organization that complained about federal money spent to promote faith-based initiatives lacked standing).

AAER also fails to establish associational standing, which requires: (1) its members would have standing to sue individually; (2) the interests it seeks to protect are germane to its purpose; and (3) neither the claim nor the relief requested requires individual members' participation. *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). AAER cannot satisfy the test's third prong because its members' individual participation in this lawsuit would be required to prove their claims and obtain the requested relief. Individual would-be investors would have to establish that they were qualified to participate in an IPO and suffered damages as a result of their exclusion. Indeed, Plaintiffs specifically ask the Court to require Bally's to sell them Class A Interests and award them damages. Compl. at 29, ¶ I. That precludes AAER from stepping into its members' shoes as a plaintiff. *See Sanner v. Bd. of Trade of City of Chicago*, 62 F.3d 918, 923 (7th Cir. 1995) (rejecting associational standing where "the individual participation of all members asserting a claim would . . . be required" to calculate damages); *Rockford Principals & Sup'rs Ass'n v. Bd. of Educ. of Rockford Sch. Dist. No. 205*, 721 F. Supp. 948, 951 (N.D. Ill. 1989) ("[T]hat the Association and all the members share a single-mindedness of purpose . . . does not obviate the need for individualized proof of damages.").

Because AAER lacks standing, its claims should be dismissed under Rule 12(b)(1).

**II.     Plaintiffs' Section 1981, 1982, And 1983 Claims Against The City Fail Because Plaintiffs Do Not Allege An Injury Caused By A City Policy.**

Plaintiffs' section 1981 and 1982 claims against the City must be brought pursuant to section 1983. "Section 1983 provides the exclusive remedy for § 1981 claims when the

6

defendant is a state actor." *Renta v. Cty. of Cook*, 735 F. Supp. 2d 957, 975 n.7 (N.D. Ill. 2010), *on reconsideration in part*, No. 05 C 2995, 2011 WL 249501 (N.D. Ill. Jan. 26, 2011)); *see also Looper Maint. Serv. Inc. v. City of Indianapolis*, 197 F.3d 908, 913 (7th Cir. 1999). And "[b]ecause § 1982 was also first enacted as part of the Civil Rights Act of 1866 and uses nearly identical language as § 1981," the Supreme Court has "'construed §§ 1981 and 1982 similarly.'" *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 336 (2020) (quoting *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 447 (2008)). Therefore, Plaintiffs' claims in Counts I-III must all comply with the requirements for pleading a section 1983 claim.

Given that, Plaintiffs must show that the alleged deprivation of their rights protected by section 1981, 1982, and 1983 "was caused by a custom or policy within the meaning of *Monell* and subsequent cases." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735-36 (1989). They do not, and cannot, make that showing, because the event that allegedly injured them—the IPO—was not issued by the City. Indeed, as explained below, the IPO was not state action at all. It cannot support a section 1983 claim. And to the extent Plaintiffs purport to challenge a City policy by objecting to the HCA's ownership provision or the definition of "minority" in the Chicago Municipal Code, Compl. ¶¶ 87, 89, 91, neither of those was the moving force behind Plaintiffs' alleged injury—the *only* injury they claim is exclusion from the IPO. Finally, any attack on the HCA itself is time-barred. Counts I, II, and III against the City should be dismissed.

     **A.**    **The IPO is not a City policy that could subject the City to section 1983 liability.**

To begin, because the IPO is not a City policy, it cannot be the basis for a section 1983 claim against the City. A municipality is liable under section 1983 only if a municipal policy caused the violation. *Monell*, 436 U.S. at 690. As the Seventh Circuit has explained, "local governments are responsible only for 'their *own* illegal acts'; they are not responsible for *others'*

7

acts falling outside an official local-government policy." *Burger v. Cty. of Macon*, 942 F.3d 372, 373 (7th Cir. 2019) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)); *see also Leahy v. Bd. of Trs. of Cmty. Coll. Dist. No. 508.*, 912 F.2d 917, 922 (7th Cir. 1990) (affirming dismissal of section 1983 claim where plaintiff failed to allege "the requisite causal connection between [a municipal] policy and the constitutional injuries complained of").

Here, the IPO was offered and administered not by the City, but by Bally's Chicago, Inc., a private entity. Compl. ¶¶ 2, 27-31, 24-36; *see also Glennon*, Dkt. 26, at 14 ("The City . . . cannot be held liable for the IPO because Bally's issued the IPO as a private actor."). Plaintiffs attempt to plead around this with conclusory allegations that "*Defendants* have impaired Plaintiffs' contractual rights by imposing and enforcing a racial qualification to contract, namely the Class A Qualification Criteria," Compl. ¶ 54 (emphasis added), and "*Defendants* have impaired Plaintiffs' right to purchase, hold, and convey the Class A Interests in Bally's Chicago, Inc. by imposing and enforcing a racial qualification to own said interests, namely the Class A Qualification Criteria," *id.* ¶ 67 (emphasis added). But no facts alleged in the Complaint suggest the IPO is a City action (or an action by the Illinois Gaming Board members), let alone a City policy. The HCA contains a provision setting a 25 percent minority ownership commitment by Bally's Chicago, Inc., but it does not reference an IPO—much less this particular IPO—as the means by which to achieve it. Thus, even on Plaintiffs' view that the IPO violated their rights, that cannot support a section 1981, 1982, or 1983 claim against the City.

**B.     The IPO is not state action.**

Plaintiffs cannot assert section 1983 claims against the City based on the IPO for a second, related reason: the IPO was not state action. Section 1983 is triggered only by government action; it does not apply to purely private conduct. *See West v. Atkins*, 487 U.S. 42, 48 (1988) ("To state a claim under § 1983, a plaintiff must . . . show that the alleged deprivation

8

was committed by a person acting under color of state law."). But Bally's Chicago, Inc. is a private entity, so its conduct in issuing the IPO is not state action.

A private entity can qualify as a state actor "in a few limited circumstances," including: (1) when the private entity performs a traditional, exclusive public function; (2) when the government compels the private entity to take a particular action; or (3) when the government acts jointly with the private entity. *See Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 809 (2019). But Plaintiffs do not demonstrate that any of these circumstances exist with respect to Bally's Chicago, Inc.'s issuance of the IPO.

First, Plaintiffs do not allege that Bally's Chicago, Inc. is performing a traditional, exclusive public function. Indeed, this is a limited category and does not apply here. "[I]t is not enough that the function serves the public good or the public interest in some way. Rather, to qualify as a traditional, exclusive public function . . ., the government must have traditionally and exclusively performed the function." *Id.* Issuing an IPO for ownership in a casino is not a traditional public function. And the fact that a private enterprise operates within a highly regulated environment, like the casino industry, does not transform its actions into state action. *See, e.g.*, *Rendell-Baker v. Kohn*, 457 U.S. 830, 841 (1982) (nonprofit's receipt of nearly all its income from the government did not make its discharge decisions state actions).

Second, Plaintiffs do not allege that Bally's Chicago, Inc. was compelled by the City to take a particular action. They make only an entirely conclusory allegation that the City and Bally's "through their officers and employees, conspired to violate Plaintiffs' civil rights by agreeing to prevent white males from owning Class A Interests." Compl. ¶ 99. But Plaintiffs point to nothing in the HCA that "compelled" Bally's to issue the IPO, so as to transform the IPO into state action. Nor do Plaintiffs identify any other sort of compulsion by the City.

Third, Plaintiffs do not show that the City and Bally's acted jointly in issuing the IPO. Plaintiffs point to no assistance the City provided Bally's such that the City should be deemed to be a joint actor in the IPO offering. To the contrary, Plaintiffs allege that Bally's alone registered and issued the IPO. Compl. ¶¶ 2, 27-31, 34-36. In sum, Bally's issuance of the IPO is not state action, and it cannot support section 1983 claims against the City.

C. **Plaintiffs cannot base a section 1983 claim on the Municipal Code or the HCA.**

In Count III, Plaintiffs attempt to broaden their challenge from the IPO itself to include an equal protection challenge to Municipal Code of Chicago § 2-92-670(n) and the HCA. Compl. ¶ 87. Neither supports a section 1983 claim against the City.

First, neither section 2-92-670(n) nor the HCA was a moving force behind Plaintiffs' alleged injury. A plaintiff bringing a *Monell* claim must demonstrate that the municipality's action was the "moving force" behind the federal rights violation. *Monell*, 436 U.S. at 694; *see also Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 415 (1997) ("As we recognized in *Monell* and have repeatedly reaffirmed, Congress did not intend municipalities to be held liable unless deliberate action attributable to the municipality directly caused a deprivation of federal rights."). This is a "rigorous causation standard" that requires the plaintiff to "show a 'direct causal link' between the challenged municipal action and the violation of his constitutional rights." *First Midwest Bank Guardian of Est. of LaPorta v. City of Chicago*, 988 F.3d 978, 987 (7th Cir. 2021) (quoting *Brown*, 520 U.S. at 404). And that standard "must be scrupulously applied," *id.*, especially where "a plaintiff claims that the municipality has not directly inflicted an injury," *Brown*, 520 U.S. at 405. "In these circumstances a rigorous application of the proof requirements is especially important." *Bohanon v. City of Indianapolis*, 46 F.4th 669, 676 (7th Cir. 2022).

10

Municipal Code of Chicago section 2-92-670(n) is a definition that appears in Chapter 2-92, Article VI of the Code, applicable to procurement services. The subsection defines the term "minority." Municipal Code of Chicago, Ill., § 2-92-670(n). Plaintiffs complain that this is a "racial classification," Compl. ¶ 87, and they ask the Court to enter "[a] declaratory judgment that the municipal code's definition of "minority" . . . violate[s] the Fourteenth Amendment," *id*. at 28, ¶ D. But the mere definition of the term in the Municipal Code cannot support a section 1983 claim because it caused Plaintiffs no direct injury.

Plaintiffs offer no coherent explanation of how the definition harmed them. They allege that they "were harmed by the Government Defendants' enforcement and implementation of the . . . municipal code," which "imposed an unconstitutional racial classification upon Plaintiffs and prevented them from purchasing Class A Interests." Compl. ¶ 91. But they fail to explain how the definition subsection was "enforced" or "implemented." Regardless, the definition of the term "minority" did not require any IPO, nor did it directly prevent Plaintiffs from participating in an IPO. Any link between section 2-92-670(n) and Plaintiffs' alleged injury is far too attenuated to satisfy *Monell*'s rigorous causation standard.

As to the HCA, it also does not require *any* IPO, much less the IPO Plaintiffs challenge. It simply states that the "Developer commits that 25% of the Project equity will be owned by Minority individuals and Minority-Owned and Controlled Businesses no later than twelve months following commencement of the Term or such later date as may be determined by the City, and will continue for no less than five years thereafter." HCA, Ex. A-9 thereto. That provision does not require that this ownership arrangement be accomplished via an IPO, and it does not require that Plaintiffs, or anyone else, be excluded from any ownership opportunity. Thus, this too was not a moving force behind Plaintiffs' alleged injury.

11

The HCA, moreover, is an attempt by the City and Bally's to implement the state mandate in the Illinois Gambling Act, 230 ILCS 10/6(a-5)(9), as Plaintiffs acknowledge, Compl. ¶ 23. As the Seventh Circuit has held, where a "municipality is acting under compulsion of state or federal law, it is the policy contained in that state or federal law, rather than anything devised or adopted by the municipality, that is responsible for the injury." *Bethesda Lutheran Homes & Servs., Inc. v. Leean*, 154 F.3d 716, 718 (7th Cir. 1998); *see also Snyder v. King*, 745 F.3d 242, 249 (7th Cir. 2014) ("It is the statutory directive, not the follow-through, which causes the harm of which the plaintiff complains."). Under *Bethesda Lutheran*, municipalities do not have to choose between following their own interpretation of the Constitution and putting themselves at "war with state government." 154 F.3d at 718. Thus, "a municipality cannot be held liable under § 1983 for efforts to implement a state mandate when the plaintiff cannot point to a separate policy choice made by the municipality." *N.N. ex rel. S.S. v. Madison Metro. Sch. Dist.*, 670 F. Supp. 2d 927, 941 (W.D. Wis. 2009).

For all these reasons, neither section 2-92-670(n) nor the HCA provides a basis for Plaintiffs' section 1983 claim against the City.[5]

### D. Any challenge to the HCA is time-barred.

Finally, to the extent Plaintiffs' section 1983 claim challenges the HCA, it is also time-barred. The HCA was executed on June 9, 2022. Compl. ¶ 24. "This circuit has consistently held that the appropriate statute of limitations for § 1983 cases filed in Illinois is two years." *Ashafa v. City of Chicago*, 146 F.3d 459, 461 (7th Cir. 1998). To the extent Plaintiffs purport to challenge

---

[5] Indeed, Plaintiffs do not even have standing to challenge section 2-92-670(n) or the HCA because neither has caused them the type of "immediate," "concrete," and "particularized" "injury in fact" necessary for standing. *See Lujan*, 504 U.S. at 560.

12

the minority ownership provision in the HCA, their action was filed on January 29, 2025, *see* Dkt. 1, over two and a half years after the execution of the HCA, and is therefore time-barred.

### III. Plaintiffs' Section 1985 Claim Against The City Fails.

Plaintiffs allege in Count V that the City and Bally's, "through their officers and employees, conspired to violate Plaintiffs' civil rights." Compl. ¶ 99. This claim should be dismissed for two reasons. First, the claim fails because Plaintiffs do not allege that they were injured by a City policy, as required by *Monell*. And second, Plaintiffs fail to plead the necessary elements of a section 1985(3) conspiracy.

#### A. Plaintiffs do not allege an injury caused by a City policy.

As explained above, Plaintiffs have not alleged that they suffered an injury directly caused by a City policy. *Monell*'s requirement that an official custom, policy, or practice be the moving force behind the plaintiff's injury also applies to Plaintiffs' section 1985 claim in Count V. *See Monitor v. City of Chicago*, 653 F. Supp. 1294, 1297 (N.D. Ill. 1987) ("Courts in this district have also interpreted the policy or custom requirement of *Monell* as applying to § 1985."); *Saniat v. City of Chicago*, No. 03 C 8691, 2003 WL 22964373, at *3 (N.D. Ill. Dec. 16, 2003); *Collier v. Rodriguez*, No. 96 C 0023, 1996 WL 535326, at *3 (N.D. Ill. Sept. 18, 1996); *Eiland v. Hardesty*, 564 F. Supp. 930, 934 (N.D. Ill. 1982). As in the other counts of the Complaint, the only specific actions Plaintiffs allege in Count V were taken by Bally's. They point to the "registration statement," Compl. ¶ 101, issuance of the IPO, *id.* ¶ 102, and restrictions on the resale of shares, *id.* ¶¶ 104, 105. That does not allege harm caused by a City policy. Because Plaintiffs do not satisfy *Monell*, Count V should be dismissed against the City.

## B. Plaintiffs fail to allege the elements of a section 1985(3) conspiracy.

To state a claim under section 1985(3), "a plaintiff must demonstrate (1) the existence of a conspiracy, (2) a purpose of depriving a person or class of persons of equal protection of the laws, (3) an act in furtherance of a conspiracy, and (4) an injury to person or property or a deprivation of a right or privilege granted to U.S. citizens." *Hernandez v. Joliet Police Dep't*, 197 F.3d 256, 263 (7th Cir. 1999). Plaintiffs' claim fails at the outset, because they do not allege the first element, the existence of a conspiracy.

To establish the existence of a conspiracy, "a plaintiff must demonstrate that the conspirators have an agreement to inflict injury or harm upon him." *Id.* That requires Plaintiffs to "plead specific material facts" showing the existence of an agreement, and "that, in entering the agreement, Defendants intended to discriminate against Plaintiffs and deprive them of their constitutional rights because of Plaintiffs' race." *Linda Constr. Inc. v. City of Chicago*, No. 15 C 8714, 2016 WL 4429893, at *3 (N.D. Ill. Aug. 22, 2016) (citing *Winterland Concessions Co. v. Trela*, 735 F.2d 257, 262 (7th Cir. 1984) and *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1983)). The allegations must show that the conspirators acted "with a single plan, the general nature and scope of which is known to each would-be conspirator." *Hernandez*, 197 F.3d at 263.

Plaintiffs have not pleaded the existence of an agreement between the City and Bally's to harm Plaintiffs. The Complaint alleges merely that the City and Bally's entered into the HCA, and that Bally's then issued the IPO to meet its obligations under the HCA. At most, if proved, these allegations would show that there was an agreement that Bally's would create a certain ownership structure for the casino. But even if proved, that would not establish a violation of Plaintiffs' rights, for the HCA does not preclude Plaintiffs from obtaining an ownership interest in the casino. *See supra* at 11. Nor would it support a finding that the City and Bally's chose to

14

implement the IPO as a route to that end, based on a shared common objective of depriving Plaintiffs and others of their right to equal protection of the laws. As explained above, the City was not responsible for issuing the IPO, and regardless, Plaintiffs allege nothing to suggest that the City and Bally's had as their objective the deprivation of Plaintiffs' rights. *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 275-76 (1993) ("[T]he 'intent to deprive of a right' requirement demands that the defendant do more than merely be aware of a deprivation of right that he causes, and more than merely accept it; he must act at least in part for the very purpose of producing it.").

In sum, Plaintiffs' section 1985(3) claim fails because they do not allege that the City and Bally's acted by agreement with a single plan and a shared goal to deprive them of their right to equal protection. Therefore, their claim against the City in Count V should be dismissed.

## CONCLUSION

For the foregoing reasons, the City respectfully requests that the Court dismiss Plaintiffs' claims against the City. The Court should dismiss AAER's claims for lack of standing, or alternatively, dismiss all Plaintiffs' claims against the City with prejudice.

| | |
|---|---|
| Date:   April 4, 2025 | Respectfully submitted, |
| ANDREW W. WORSECK<br>andrew.worseck@cityofchicago.org<br>ELLEN W. MCLAUGHLIN<br>ellen.mclaughlin@cityofchicago.org<br>JOHN V. CASEY<br>john.casey@cityofchicago.org<br>City of Chicago, Department of Law<br>Constitutional and Commercial<br>  Litigation Division<br>2 N. LaSalle St., Suite 520<br>Chicago, Illinois 60602<br>(312) 744-7129 / 742-5147 / 742-0307<br><br>*Attorneys for City Defendants* | MARY B. RICHARDSON-LOWRY<br>Corporation Counsel of the City of Chicago<br><br>By: /s/ *Ellen W. McLaughlin*<br>Chief Assistant Corporation Counsel |

**CERTIFICATE OF SERVICE**

      I, Ellen McLaughlin, an attorney, hereby certify that on April 4, 2025, I caused a copy of the foregoing **City of Chicago's Memorandum of Law in Support of its Rule 12(b)(1) and (6) Motion to Dismiss Plaintiffs' Complaint** to be electronically filed with the Clerk of the United States District Court for the Northern District of Illinois using the CM/ECF system, which will send notifications of such filing to all parties that have appeared in this action.

                                                                 */s/ Ellen W. McLaughlin*
                                                                 Chief Assistant Corporation Counsel