**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| AMERICAN ALLIANCE FOR EQUAL RIGHTS, RICHARD FISHER, and PHILLIP ARONOFF, | |
| Plaintiffs, | |
| v. | Case No. 1:25-cv-1017 |
| CITY OF CHICAGO, BALLY'S CHICAGO INC., BALLY'S CHICAGO OPERATING COMPANY, LLC, & SEAN BRANNON, STEPHAN FERRARA, DIONNE HAYDEN & CHARLES SCHMADEKE, *in their official capacity as Members of the Illinois Gaming Board*, | Hon. Jeffrey I. Cummings |
| Defendants. | |

**DEFENDANTS BALLY'S CHICAGO INC. AND BALLY'S CHICAGO
OPERATING COMPANY, LLC'S MEMORANDUM IN SUPPORT OF
RULE 12(b)(6) MOTION TO DISMISS**

Patricia Brown Holmes
Ronald S. Safer
Abigail L. Peluso
Lucas T. Rael
**RILEY SAFER HOLMES & CANCILA LLP**
1 S. Dearborn St., Suite 2200
Chicago, IL 60603
(312) 471-8700

*Counsel for Defendants Bally's Chicago Inc.
and Bally's Chicago Operating Company LLC*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

BACKGROUND ............................................................................................................. 2

LEGAL STANDARD .................................................................................................... 4

ARGUMENT ................................................................................................................. 4

I.     PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 1981 ...................... 4

     A.    Plaintiffs Fail to Plausibly Allege that Bally's Acted with Racially Discriminatory Intent. .......................................................................... 5

     B.    Plaintiffs Also Fail to Plausibly Allege But-For Causation Under *Comcast* Because They Allege Non-Protected Characteristics, Like Sex, as the Cause of Their Purported Injuries. ............................................ 7

     C.    Plaintiffs Fail to Allege an Enforceable Contractual Interest as Required to State a Claim under Section 1981. .................................. 9

     D.    Plaintiffs' Complaint Should Also be Dismissed Because Implementing a Valid Remedial Program Does Not Violate Section 1981 ............................. 11

II.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 1982 ..................... 13

III.   PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 1985 .................... 13

CONCLUSION ............................................................................................................. 15

i

## TABLE OF AUTHORITIES

Page

**CASES**

*Adam v. Obama for Am.*,
210 F. Supp. 3d 979 (N.D. Ill. 2016) ........................................................................10

*Arora v. Nav Consulting Inc.*,
No. 21 C 4443, 2022 WL 7426211 (N.D. Ill. Oct. 13, 2022) .............................8, 9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...............................................................................................4, 6

*Bachman v. St. Monica's Congregation*,
902 F.2d 1259 (7th Cir. 1990) ...................................................................................8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................................................................................................4

*In re Birmingham Reverse Discrimination Emp. Litig.*,
20 F.3d 1525 (11th Cir. 1994) .................................................................................12

*Bowman v. City of Franklin*,
980 F.2d 1104 (7th Cir. 1992) .................................................................................14

*Chambers v. Vill. of Oak Park*,
No. 22-CV-6008, 2024 WL 4753812 (N.D. Ill. Nov. 12, 2024) .........................4, 7

*Coleman & Williams, Ltd. v. Wis. Dep't of Workforce Dev.*,
401 F. Supp. 2d 938 (E.D. Wis. 2005) ......................................................................9

*Comcast Corp. v. National Ass'n of African American-Owned Media*,
589 U.S. 327 (2020) .......................................................................................... *passim*

*Doe v. Kamehameha Schs.*,
470 F.3d 827 (9th Cir. 2006) ...................................................................................12

*Domino's Pizza, Inc. v. McDonald*,
546 U.S. 470 (2006) ..........................................................................................4, 9, 10

*Ennenga v. Starns*,
677 F.3d 766 (7th Cir. 2012) .....................................................................................3

*Equal Emp. Opportunity Comm'n v. Sis-Bro Inc.*,
No. 24-CV-968-JPG, 2025 WL 213992 (S.D. Ill. Jan. 16, 2025).............................8

*Etheridge v. Hudson Grp. Retail, LLC*,
No. 20-CV-7204, 2022 WL 375556 (N.D. Ill. Feb. 8, 2022) ....................................4

*Ferrill v. Parker Grp., Inc.*,
    168 F.3d 468 (11th Cir. 1999) ...................................................................12

*Gen. Bldg. Contractors Ass'n v. Pennsylvania*,
    458 U.S. 375 (1982)..................................................................................5

*Gilbank v. Wood Cnty. Dep't of Human Servs.*,
    111 F.4th 754 (7th Cir. 2024) ...................................................................14

*Glennon v. Brandon Johnson, et al.*,
    No. 1:25-cv-1057 (N.D. Ill.) .....................................................................14

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363, 379 (1982)...........................................................................5

*Hickerson v. Macy's Dep't Store*,
    No. CIV. A. 98-3170, 1999 WL 144461 (E.D. La. Mar. 16, 1999) .......................11

*Hill v. Target Corp.*,
    No. 24 C 341, 2025 WL 919614 (N.D. Ill. Mar. 26, 2025) .................................8, 9

*Hoffman-La Roche, Inc. v. Greenberg*,
    447 F.2d 872 (7th Cir. 1971) ....................................................................14

*Humphries v. CBOCS W., Inc.*,
    474 F.3d 387 (7th Cir. 2007), *aff'd*, 553 U.S. 442 (2008) .................................12

*James v. City of Evanston*,
    No. 20-CV-00551, 2021 WL 4459508 (N.D. Ill. Sept. 29, 2021) ...........5, 13, 14, 15

*Johnson v. Transp. Agency*,
    480 U.S. 616 (1987)............................................................................11, 12

*D.B. ex rel. Kurtis B. v. Kopp*,
    725 F.3d 681 (7th Cir. 2013) .....................................................................7

*McNamara v. City of Chicago*,
    867 F. Supp. 739 (N.D. Ill. 1994) .........................................................11, 12, 13

*McReynolds v. Merrill Lynch & Co.*,
    694 F.3d 873 (7th Cir. 2012) .....................................................................6

*Miao v. United Airlines, Inc.*,
    No. 24 C 01345, 2025 WL 843755 (N.D. Ill. Mar. 18, 2025) ..............................6

*Milchtein v. Milwaukee Cnty.*,
    42 F.4th 814 (7th Cir. 2022) ..................................................................14, 15

*Miller v. City of Monona*,
 784 F.3d 1113 (7th Cir. 2015) ........................................................7

*Mohn v. Gerald Motors Inc.*,
 No. 23 C 14194, 2025 WL 564259 (N.D. Ill. Feb. 20, 2025)....................................9

*Morris v. Off. Max, Inc.*,
 89 F.3d 411 (7th Cir. 1996) ........................................................9

*Payne v. Abbott Lab'ys*,
 999 F. Supp. 1145 (N.D. Ill. 1998) ........................................................5

*Peaster v. McDonald's Corp.*,
 No. 22 CV 7037, 2023 WL 5387573 (N.D. Ill. Aug. 22, 2023) ............................8

*Piccioli v. Plumbers Welfare Fund Loc. 130, U.A.*,
 No. 19-CV-00586, 2020 WL 6063065 (N.D. Ill. Oct. 14, 2020) ........................8

*Postell v. Fallsburg Libr.*,
 No. 20-CV-03991 (NSR), 2022 WL 1092857 (S.D.N.Y. Apr. 8, 2022) ................8

*Pourghoraishi v. Flying J, Inc.*,
 449 F.3d 751 (7th Cir. 2006) ........................................................5

*Reed v. Palmer*,
 906 F.3d 540 (7th Cir. 2018) ........................................................2

*Rodriguez v. CP Dev., Inc.*,
 No. CV 20-1672, 2021 WL 3037712 (W.D. Pa. July 19, 2021)............................9

*Schmude v. Sheahan*,
 312 F. Supp. 2d 1047 (N.D. Ill. 2004) ........................................................3

*Shea v. Kerry*,
 796 F.3d 42 (D.C. Cir. 2015) ........................................................12

*Shed v. Fraternal Enters. LP*,
 No. 21-CV-5523, 2023 WL 3074876 (N.D. Ill. Apr. 25, 2023)........................6, 11

*Southend Neighborhood Improvement Ass'n v. Cnty. of St. Clair*,
 743 F.2d 1207 (7th Cir. 1984) ........................................................13

*Tamayo v. Blagojevich*,
 526 F.3d 1074 (7th Cir. 2008) ........................................................7, 9

*Thurmon v. Mount Carmel High Sch.*,
 191 F. Supp. 3d 894 (N.D. Ill. 2016) ........................................................6

*Tillman v. Wheaton–Haven Recreation Ass'n, Inc.*,
  410 U.S. 431 (1973) ...................................................................................13

*United Steelworkers of Am., AFL-CIO-CLC v. Weber*,
  443 U.S. 193 (1979) ...................................................................................12

*Walker v. Abbott Lab'y*,
  340 F.3d 471 (7th Cir. 2003) ................................................................9, 10

*Washington v. Hughes Socol Piers Resnick & Dym, Ltd.*,
  No. 18-CV-05162, 2020 WL 1503652 (N.D. Ill. 2020) ............................6

*Watson v. C.P.*,
  No. 23-CV-1270-JPS, 2023 WL 7130292 (E.D. Wis. Oct. 30, 2023) .....................................14

*Williams v. State Farm Mut. Auto. Ins. Co.*,
  609 F. Supp. 3d 662 (N.D. Ill. 2022) .........................................................6

*Winterland Concessions Co. v. Trela*,
  735 F.2d 257 (7th Cir. 1984) ....................................................................14

*Yates v. H&M Int'l Transp., Inc.*,
  No. 18-CV-6001, 2019 WL 2994527 (N.D. Ill. July 9, 2019) ..................15

**STATUTES**

230 ILCS 10/6(a-5)(9) ....................................................................................2, 6

42 U.S.C. § 1981 ....................................................................................... *passim*

42 U.S.C. § 1982 ...............................................................................1, 4, 13, 14

42 U.S.C. § 1983 ...............................................................................................1

42 U.S.C. § 1985 ....................................................................................... *passim*

**RULES**

Fed. R. Civ. P. 8(a)(2) .......................................................................................4

Fed. R. Civ. P. 12(b)(6) .....................................................................1, 4, 14, 15

**OTHER AUTHORITIES**

MCC 2-92-660 .................................................................................................12

MCC 2-92-670(n) .......................................................................................2, 3, 7

Plaintiff American Alliance for Equal Rights ("AAER") has set its sights on a new target as part of its self-described mission to weaponize the federal court system and end diversity initiatives nationwide.[1] *See* Complaint ("Compl.") ¶¶ 7–8. Along with two of its members, Richard Fisher and Philip Aronoff, AAER brings this lawsuit against Bally's Chicago, Inc. ("Bally's Chicago"), Bally's Chicago Operating Company LLC ("Bally's OpCo" and together "Bally's"), the City of Chicago (the "City"), and members of the Illinois Gaming Board alleging race and sex discrimination under 42 U.S.C. §§ 1981, 1982, 1983, and 1985.[2] Plaintiffs say they wanted to participate in an initial public offering by Bally's Chicago in January of 2025 (the "Bally's IPO"), but were improperly "excluded from the table" because they are "white males." Compl. ¶¶ 4–5.

Each of Plaintiffs' three claims against Bally's is deficient as a matter of law and should be dismissed. The Section 1981 claim fails to plausibly allege multiple essential elements, including intentional discrimination, but-for causation under *Comcast Corp. v. National Ass'n of African American-Owned Media*, 589 U.S. 327 (2020), and the impairment of an enforceable contractual interest. The Section 1982 claim falters for the same reasons. Plaintiffs' Section 1983 claim likewise fails to adequately plead an essential component: an agreement between Bally's and the City for the purpose of depriving them of their constitutional rights. Accordingly, Plaintiffs fail to adequately plead that Bally's violated Section 1981, 1982, or 1985. Their complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).[3]

---

[1] *See About Us*, THE AMERICAN ALLIANCE FOR EQUAL RIGHTS, https://americanallianceforequalrights.org/about/ (last accessed March 9, 2025).

[2] The complaint sets forth a Count One, Count Two, Count Three, and Claim Five. Compl. pp. 15, 19, 22, 26. Given the inconsistent numbering, and for the avoidance of doubt, Bally's will refer to Plaintiffs' claims by their statutory citation: Section 1981, Section 1982, Section 1983 (for which Bally's is not a named defendant), and Section 1985.

[3] Another plaintiff separately filed a lawsuit arising out of the Bally's IPO. *See Glennon v. Brandon Johnson, et al.*, No. 1:25-cv-1057 (N.D. Ill.) (Valderrama, J.). Judge Valderrama recently denied that plaintiff's request for an emergency temporary restraining order and preliminary injunction, citing his

1

## BACKGROUND

In 2019, the City obtained authorization to issue a single casino license, and it later sought proposals from casino developers. Compl. ¶¶ 20–21. Bally's was selected for the project after a competitive bidding process, and in 2022, Bally's OpCo and the City entered into a Host Community Agreement ("HCA"). *Id.* ¶¶ 24–25; *see* Exhibit A, HCA.[4]

The Illinois Gambling Act requires that a casino license applicant demonstrate that it "used its best efforts to reach a goal of 25% ownership representation by minority persons and 5% ownership representation by women." 230 ILCS 10/6(a-5)(9). To satisfy that statutory term, Bally's OpCo and the City agreed in the HCA that "25% of the [casino project] equity will be owned by Minority individuals and Minority-Owned and Controlled Businesses[.]" Exhibit A, HCA, at A-9-1; Compl. ¶¶ 26–27. The HCA defined "minority" to include women, regardless of race, and any individual who met the definition of "minority" set forth in the City's municipal code at MCC 2-92-670(n). Exhibit A, HCA, at A-3-1 (defining "woman"), A-9-1 (defining "minority"). The Chicago municipal code, in turn, broadly defines "minority" based on presumptions of social disadvantage. *See* MCC 2-92-670(n)(i-ii).[5]

To meet the HCA's ownership commitments, Bally's Chicago announced the Bally's IPO in December of 2024. As the Form S-1 Registration Statement ("S-1") filed with the Securities and Exchange Commission ("SEC") explains, the Bally's IPO was open to individuals or entities

---

failure to establish a likelihood of success on the merits and that he will suffer irreparable harm absent an injunction. *Id.*, Dkt. 26 ("Glennon TRO Order"), at 6–24.

[4] Because Plaintiffs' claims rely on the HCA (Exhibit A hereto) and the S-1 (Exhibit B hereto), and specifically incorporate their contents by reference, *see, e.g.,* Compl. ¶ 30, this Court may consider both documents in evaluating the instant motion. *Reed v. Palmer*, 906 F.3d 540, 548 (7th Cir. 2018).

[5] "Minority" means "any individual in the following racial or ethnic groups, members of which are rebuttably presumed to be socially disadvantaged . . . and individual members of other groups . . . found by the City to be socially disadvantaged by having suffered racial or ethnic prejudice or cultural bias within American society, without regard to individual qualities, resulting in decreased opportunities to compete in Chicago area markets or do business with the City."

who met requirements listed as the "Class A Qualification Criteria." Compl. ¶ 31; Exhibit B, S-1, at 19. In relevant part, those criteria required prospective investors to be a woman, an individual who meets the definition of "minority" set forth in MCC 2-92-670(n), or an entity that is at least 51% controlled by either group. Compl. ¶¶ 31, 32, 42; Exhibit A, HCA, at A-9-1.

Through an online portal, individuals or entities who met the Class A Qualification Criteria could submit an investor commitment that would allow that prospective investor to register to purchase Class A shares of Bally's Chicago. Exhibit B, S-1, at 187–88. Then, provided that the SEC approved the S-1, the Bally's IPO would close, prospective investor accounts would be fully funded, and Class A shares would be distributed. The funds obtained from the Bally's IPO would then be used by Bally's Chicago to purchase an aggregate 25% economic interest in Bally's OpCo, which is the entity that will operate the casino. Exhibit B, S-1, at 113. Through that purchase, investors would then have a stake in the casino project.

The opportunity to register for the Bally's IPO ended on January 31, 2025. Compl. ¶ 34. The Bally's IPO was scheduled to close on or about February 7, 2025, *id.*, but the SEC has not yet approved the offering. The Bally's IPO remains on hold pending final SEC approval.[6]

Plaintiffs take issue with the structure of the Bally's IPO. They claim they were unlawfully prevented from investing "because they are white males." Compl. ¶ 5. They filed this lawsuit against Bally's alleging violations of Sections 1981, 1982, and 1985.

---

[6] *See* Bally's Free Writing Prospectus (Feb. 28, 2025), https://www.sec.gov/Archives/edgar/data/ 1935799/000110 465925019172/tm2310971d36_fwp.htm; *accord* Robert Channick, *Bally's Chicago $250 million IPO stalled at SEC*, CHICAGO TRIBUNE (Feb. 28, 2025), https://www.chicagotribune.com/ 2025/02/28/ballys-chicago-minority-ipo-sec-refund/. The Court may take judicial notice of these documents because their existence is not subject to reasonable dispute, and is capable of ready determination through sources whose accuracy cannot be questioned. *Ennenga v. Starns*, 677 F.3d 766, 773–74 (7th Cir. 2012); *Schmude v. Sheahan*, 312 F. Supp. 2d 1047, 1064 (N.D. Ill. 2004).

## **LEGAL STANDARD**

To withstand a motion to dismiss under Rule 12(b)(6), Plaintiffs' complaint must state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6); Fed. R. Civ. P. 8(a)(2) (a complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief"); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Unless its well-pleaded factual allegations establish "a claim to relief that is plausible on its face," a complaint must be dismissed. *Twombly*, 550 U.S. at 570. When considering a Rule 12(b)(6) motion to dismiss, a court must accept factual matters in the complaint as true but need not accept "bald allegations" or "legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009); *see also Twombly*, 550 U.S. at 555. Of course, plausibility "is not satisfied by mere 'labels and conclusions,' 'formulaic recitation of the elements of a cause of action,' or facts 'merely consistent' with a defendant's liability." *Chambers v. Vill. of Oak Park*, No. 22-CV-6008, 2024 WL 4753812, at *2 (N.D. Ill. Nov. 12, 2024) (quoting *Twombly*, 550 U.S. at 545, 555). In short, "[f]acts count, but conclusions do not." *Etheridge v. Hudson Grp. Retail, LLC*, No. 20-CV-7204, 2022 WL 375556, at *4 (N.D. Ill. Feb. 8, 2022). "A plaintiff who says that he has a claim, in conclusory fashion, doesn't say enough." *Id.*

## **ARGUMENT**

### I. PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 1981

Section 1981 has a specific function: it "protects the equal right of '[a]ll persons within the jurisdiction of the United States' to 'make and enforce contracts' without respect to race." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474–75 (2006) (quoting 42 U.S.C. § 1981(a)); *see also Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 389–91 (1982) (Section 1981 redresses only purposeful, intentional, race-based discrimination in the making or enforcing of contracts). To state a claim under Section 1981, Plaintiffs must allege facts that plausibly show Bally's intentionally discriminated against them based on race and that the discrimination excluded

4

them from making and enforcing a contract. *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 756 (7th Cir. 2006). They also must plausibly allege that racial animus was the but-for cause of their alleged injury. *Comcast*, 589 U.S. at 329–30, 341.

Plaintiffs[7] fail to state a Section 1981 claim for two independent reasons. First, they do not plausibly allege each essential element of a Section 1981 claim. Second, they cannot, as a matter of law, state a claim against Bally's under Section 1981 for actions taken to implement a valid remedial program.

### A. Plaintiffs Fail to Plausibly Allege that Bally's Acted with Racially Discriminatory Intent.

Plaintiffs allege that Bally's imposed a "racial qualification to contract" through the Class A Criteria and thus intentionally discriminated against Plaintiffs based on their race. Compl. ¶¶ 31, 54. But the complaint provides no facts that support an inference of intentional racial animus by Bally's, and the facts that are pled or incorporated by reference establish the opposite.

Section 1981 protects against only *intentional* discrimination. *Gen. Bldg. Contractors Ass'n*, 458 U.S. at 391. Accordingly, Plaintiff must plead and ultimately prove that Bally's acted with discriminatory purpose.[8] *Payne v. Abbott Lab'ys*, 999 F. Supp. 1145, 1152 (N.D. Ill. 1998). "[W]hen it comes to allegations of intent, the complaint [must] include enough facts to nudge [the]

---

[7] The allegations in the complaint are also insufficient to establish that AAER has either organizational or associational standing. It has not alleged a concrete injury to itself as an organization, or a drain on its resources. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). Nor has it established associational standing, as the claims asserted and relief requested would require participation by each of individual member of the organization (some of whom may well have been eligible to participate in the Bally's IPO, assuming AAER's membership is not restricted to men). At minimum, AAER should be dismissed from this lawsuit pursuant to Rule 12(b)(2).

[8] While sometimes considered together as a single element, intent and causation are distinct elements that are *both* necessary to successfully state a Section 1981 claim. The same facts sometimes can show both elements, but while racial animus is necessary to prove a Section 1981 claim, it is not always sufficient by itself to prove that race was a but-for cause of a contract-related injury, and vice versa. *See, e.g., James v. City of Evanston*, No. 20-CV-00551, 2021 WL 4459508, at *11–12 (N.D. Ill. Sept. 29, 2021) (although plaintiff asserted the city's action was racially motivated, the complaint pleaded that avoidance of public scrutiny, not race, was the but-for cause).

claims across the line from conceivable to plausible." *Shed v. Fraternal Enters. LP*, No. 21-CV-5523, 2023 WL 3074876, at *6 (N.D. Ill. Apr. 25, 2023); *Iqbal*, 556 U.S. at 676, 683 (confirming that a plaintiff "must plead and prove that [the defendants] acted with discriminatory purpose," which requires the plaintiffs to present "factual allegation[s] sufficient to plausibly suggest [the defendants] discriminatory state of mind"); *Miao v. United Airlines, Inc.*, No. 24 C 01345, 2025 WL 843755, at *4 (N.D. Ill. Mar. 18, 2025) (same).

Plaintiffs allege no such discriminatory intent or purpose by Bally's. In fact, the complaint affirmatively disclaims that Bally's acted with discriminatory intent by alleging that Bally's Chicago undertook the Bally's IPO solely to comply with the requirements of the Illinois Gambling Act. Compl. ¶ 26 ("***In compliance with the Act***, the Agreement specifies that Bally's Chicago OpCo committed that minorities will own 25% of the Casino.") (emphasis added).

Otherwise, the complaint repeatedly parrots that Plaintiffs were excluded from the Bally's IPO "because they are white males." *See, e.g.,* Compl. ¶¶ 4, 5, 9, 99. These kinds of threadbare, conclusory statements do not plausibly allege that Bally's acted with racial intent. *See McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 887 (7th Cir. 2012) (the required level of pleading specificity for race-based intent rises "with the complexity of the claim"); *Williams v. State Farm Mut. Auto. Ins. Co.*, 609 F. Supp. 3d 662, 681 (N.D. Ill. 2022) (discrimination claims do not become plausible by "merely tack[ing] 'because of race'" onto the allegations); *Washington v. Hughes Socol Piers Resnick & Dym, Ltd.*, No. 18-CV-05162, 2020 WL 1503652, at *5 (N.D. Ill. 2020) (a claim of a "complex discrimination conspiracy" demands "more than ordinary allegations") (emphasis omitted); *Thurmon v. Mount Carmel High Sch.*, 191 F. Supp. 3d 894, 897 (N.D. Ill. 2016) (dismissing a 1981 claim because "to the extent that Plaintiff does allege a nexus between racial discrimination and [his] specific treatment, it is a conclusory and unsupported allegation").

The facts alleged by Plaintiffs instead affirmatively show that Bally's acted with non-racial, non-discriminatory intent. Many of the Class A Qualification Criteria are race-neutral or race-inclusive. All women, ***regardless of race***, were eligible to participate in the Bally's IPO. Any member, ***regardless of race and including white men***, of an entity that is majority owned by a woman or minority was eligible. Exhibit B, S-1, at 19. All "persons of Spanish culture with origins in Mexico, South or Central America or the Caribbean Islands, ***regardless of race,***" were eligible. MCC 2-92-670(n)(i)(B) (emphasis added). Failing to allege that Bally's acted with discriminatory intent—and in fact alleging the ***opposite***—requires dismissal of the Section 1981 claim. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008) (recognizing that a "party may plead itself out of court by pleading facts that establish an impenetrable defense to its claims," and "[i]f the plaintiff voluntarily provides unnecessary facts in her complaint, the defendant may use those facts to demonstrate that she is not entitled to relief.").

**B.    Plaintiffs Also Fail to Plausibly Allege But-For Causation Under *Comcast* Because They Allege Non-Protected Characteristics, Like Sex, as the Cause of Their Purported Injuries.**

Relatedly, Plaintiffs fail to plausibly allege that race was the but-for cause of their purported injury as required by *Comcast* because they explicitly identify multiple criteria that precluded them from participating in the Bally's IPO—their race ***and*** their sex. Compl. ¶ 5 ("Plaintiffs are the American Alliance for Equal Rights and two individuals who cannot invest because they are white ***males***.") (emphasis added); ¶¶ 4, 9, 11, 12, 39, 40, 42 (citing both Plaintiffs' race and sex as the reason why Bally's excluded them from the Bally's IPO); ¶ 44 (incorporating by reference into Plaintiffs' Section 1981 claim all preceding allegations). As alleged in the complaint, it is not just equally plausible that Plaintiffs were excluded from the Bally's IPO because they are not women—it is a certainty. *Id.* But for their ***sex***, and ***regardless of their race***, Plaintiffs would have met the Class A Qualification Criteria and been eligible to individually invest

in the Bally's IPO. By pleading multiple causes, they have pleaded themselves "out of court by alleging facts that foreclose relief." *Chambers*, 2024 WL 4753812, at *2 (citing *Miller v. City of Monona*, 784 F.3d 1113, 1121 (7th Cir. 2015); *D.B. ex rel. Kurtis B. v. Kopp*, 725 F.3d 681, 686 (7th Cir. 2013)).

Under Section 1981, racial discrimination cannot be but "one factor among many in a defendant's decision"—it "must be ***the*** determining factor." *Piccioli v. Plumbers Welfare Fund Loc. 130, U.A.*, No. 19-CV-00586, 2020 WL 6063065, at *6 (N.D. Ill. Oct. 14, 2020) (emphasis added); *see also Bachman v. St. Monica's Congregation*, 902 F.2d 1259, 1262–63 (7th Cir. 1990) ("To be actionable, racial prejudice must be a but-for cause, or in other words a necessary condition, of the refusal to transact. Otherwise, there is no harm from the prejudice—the harm would have occurred anyway…") (cleaned up). Thus, a plaintiff cannot "allege multiple discrimination theories as the 'but for' cause for a Section 1981 violation" and successfully state a Section 1981 claim. *Arora v. Nav Consulting Inc.*, No. 21 C 4443, 2022 WL 7426211, at *2 (N.D. Ill. Oct. 13, 2022). As another court in this district recently confirmed, race, and ***not some other factor***, must be ***the*** cause of the plaintiff's complained-of injury. *Hill v. Target Corp.*, No. 24 C 341, 2025 WL 919614, at *4 (N.D. Ill. Mar. 26, 2025) (dismissing Section 1981 claim on a Rule 12(b)(6) motion to dismiss and noting that other courts have correctly "dismissed Section 1981 claims under a but-for causation theory where plaintiffs articulated a theory of discrimination based, at least in part, on a characteristic § 1981 does not protect.") (cleaned up).[9] Plaintiffs' own

---

[9] *Accord Peaster v. McDonald's Corp.*, No. 22 CV 7037, 2023 WL 5387573, at *4 (N.D. Ill. Aug. 22, 2023) (collecting cases); *Equal Emp. Opportunity Comm'n v. Sis-Bro Inc.*, No. 24-CV-968-JPG, 2025 WL 213992, at *3 (S.D. Ill. Jan. 16, 2025) (granting the defendant's motion to dismiss and rejecting the argument that multiple causes do not prevent one from being a "but-for" cause under *Comcast*); *Postell v. Fallsburg Libr.*, No. 20-CV-03991 (NSR), 2022 WL 1092857, at *9 (S.D.N.Y. Apr. 8, 2022) (concluding, post-*Comcast*, that the plaintiff's "bundled" allegations of "race, gender, or age" precluded but-for finding under Section 1981); *Rodriguez v. CP Dev., Inc.*, No. CV 20-1672, 2021 WL 3037712, at *5 (W.D. Pa. July 19, 2021) (dismissing Section 1981 claim based on "mixed bag" of national origin and race

allegations make clear that although Plaintiffs believe race was one factor in their exclusion from the Bally's IPO, it unequivocally was not the only purported reason, let alone the but-for cause, of Plaintiffs' so-called injuries. It is fatal to Plaintiffs' claim here that they concurrently allege racial **and non-racial reasons** for their exclusion from the Bally's IPO. *Arora*, 2022 WL 7426211, at *2; *Hill*, 2025 WL 919614, at *4; *Tamayo*, 526 F.3d at 1086 (facts voluntarily provided by a plaintiff in a complaint can be used by defendant to show they are not entitled to relief).

### C.     Plaintiffs Fail to Allege an Enforceable Contractual Interest as Required to State a Claim under Section 1981.

Plaintiffs' Section 1981 claim also must be dismissed because the complaint fails to plausibly, rather than just conceivably, allege an enforceable "contractual interest" with which Bally's interfered. "[P]roof of a contractual relationship is necessary to establish a § 1981 claim." *Walker v. Abbott Lab'y*, 340 F.3d 471, 475 (7th Cir. 2003); *Domino's Pizza*, 549 U.S. at 476 ("Any claim brought under § 1981, therefore, must initially identify an impaired 'contractual relationship,' § 1981(b), under which the plaintiff has rights."). The possible loss of future contract opportunities is not enough to state a Section 1981 claim—instead, a plaintiff must allege the actual loss of a contract interest. *Morris v. Off. Max, Inc.*, 89 F.3d 411, 414–15 (7th Cir. 1996). Here, the complaint at best alleges the former, not the latter. It therefore fails to state a plausible claim.

The S-1 describes a multi-step process by which a prospective investor could potentially contract with Bally's Chicago to purchase Class A shares.[10] After successfully navigating the

---

discrimination allegations); *but see Mohn v. Gerald Motors Inc.*, No. 23 C 14194, 2025 WL 564259, at *9 (N.D. Ill. Feb. 20, 2025).

[10] Bally's OpCo is not a party to the "contract" from which Plaintiffs allegedly were excluded, nor does the complaint allege any facts from which it can be inferred that Bally's OpCo, as a third party, interfered with Plaintiffs' contractual rights vis-à-vis Bally's Chicago. *Coleman & Williams, Ltd. v. Wis. Dep't of Workforce Dev.*, 401 F. Supp. 2d 938, 947 (E.D. Wis. 2005) (for a plaintiff to plead and ultimately prove a Section 1981 claim based on the defendant's discriminatory interference with the plaintiff's ability to contract with a third party, the plaintiff must establish that "the defendant possessed sufficient authority to significantly interfere with its ability to obtain contracts with third parties, and that it actually exercised

investor portal and opening an account, a qualifying individual or entity could choose to make an investment commitment. Exhibit B, S-1, at 187. That commitment was fully revocable, and by its terms, did not obligate the individual or entity to actually fund their account at that time or purchase shares. *Id.* at 188 ("You are not obligated to purchase shares at the time you submit an investment commitment…Investment commitments that are never funded can be cancelled at any time. Investment commitments that are funded but not closed upon can be refunded and cancelled by requesting an electronic transfer of funds or a check…"). Investors also were "not [ ] required to deposit funds into [their account] sufficient to cover the purchase price of the Class A Interests [they] reserved until after the registration statement is declared effective by the SEC" (which has, as of the time of this writing, still not occurred). *Id.* Only after the offering was approved by the SEC, an investor's account funded, and their commitment was accepted by Bally's, could a prospective investor develop a contractual interest with Bally's Chicago. *Id.*

That multiple intervening and uncertain events need to take place before a legally protected contractual interest could conceivably arise out of the Bally's IPO makes Plaintiffs' Section 1981 claim too speculative to state a claim. *Domino's Pizza*, 549 U.S. at 476 ("Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship . . . so long as the plaintiff has or would have rights under the existing or proposed contractual relationship."); *see also Walker*, 340 F.3d at 475 (even as amended by the Civil Rights Act of 1991, Section 1981's protections "still center on **contractual** rights") (emphasis added). A contract under which the plaintiff has rights must be at stake, not simply an "agreement . . . of mutual assent." *Adam v. Obama for Am.*, 210 F. Supp. 3d 979, 985 (N.D. Ill. 2016) (quoting Restatement (Second) Of Contracts §§ 3, 17); *Hickerson v. Macy's Dep't Store*, No. CIV. A. 98-3170, 1999 WL 144461, at

---

such authority to the plaintiff's detriment"); *Domino's Pizza*, 546 U.S. at 476–77. Because Plaintiffs' complaint is devoid of these required allegations, at minimum, Bally's OpCo should be dismissed.

*2 (E.D. La. Mar. 16, 1999) ("There is no generalized right under section 1981 to have access to opportunities to make prospective contracts."). The only "contract" alleged in the complaint is the online investment commitment and the subscription agreement. Compl. ¶ 36. But because that commitment requires multiple conditions precedent before a prospective contractual interest will arise, including approval by the SEC, the complaint fails to nudge the contractual element of Plaintiffs' Section 1981 claim "across the line from conceivable to plausible," and should be dismissed. *Shed*, 2023 WL 3074876, at *6.

### D. Plaintiffs' Complaint Should Also be Dismissed Because Implementing a Valid Remedial Program Does Not Violate Section 1981.

Separate from the pleading deficiencies of their Section 1981 claim, Plaintiffs complaint must be dismissed because it asks this Court to declare illegal what the law explicitly allows. Indeed, the language of the complaint lays bare the true purpose of this lawsuit. Plaintiffs do not seek to actually invest in the Bally's IPO. Rather, AAER wants to add to its track record of "frequently and successfully litigat[ing] high-profile civil rights cases" against diversity initiatives. Compl. ¶ 8. It intends to use this case, and others like it, to try to reshape the legal landscape surrounding affirmative action programs—in their own words, to vindicate an "ancient faith" that an individual's race "should not be used to help them, or harm them, in their life's endeavors." *See supra* n.1. But Plaintiffs cannot succeed under these facts.

The Bally's IPO is a private, remedial program directed at addressing racial imbalances that does not violate Section 1981.[11] *Johnson v. Transp. Agency*, 480 U.S. 616 (1987). A private,

---

[11] The remedial-program exception was originally devised in the Title VII employment context, but this bar to liability is also available to the Section 1981 defendant. *Ferrill v. Parker Grp., Inc.*, 168 F.3d 468, 474 (11th Cir. 1999); *McNamara v. City of Chicago*, 867 F. Supp. 739, 752 (N.D. Ill. 1994) ("The standards for determining the validity of an affirmative action plan are the same under both Title VII and section 1981."). So too is it available in the non-employment context. *Doe v. Kamehameha Schs.*, 470 F.3d 827, 843–46 (9th Cir. 2006) (evaluating affirmative action plan to reduce racial discrimination in non-profit school enrollments under *Johnson*). Indeed, in many circumstances, Title VII and Section 1981 are interpreted in

race-conscious remedial program is valid if it addresses "manifest racial imbalances" and does not "unnecessarily trammel" on the rights of others or create an "absolute bar" to the advancement of others. *See id.* at 626–30; *United Steelworkers of Am., AFL-CIO-CLC v. Weber*, 443 U.S. 193, 208 (1979) (voluntary, private, race-conscious efforts to "abolish traditional patterns" of segregation and hierarchy are not prohibited); *Shea v. Kerry*, 796 F.3d 42, 57 (D.C. Cir. 2015) ("a valid plan rests on an adequate factual predicate justifying its adoption, such as a 'manifest imbalance,'" and refrains from "unnecessarily trammeling the rights of white employees") (cleaned up).

The Bally's IPO satisfies both conditions. First, the Class A Qualification Criteria address a manifest racial imbalance. Under this standard, a private actor need not point to its own prior discriminatory practices, but instead must show only a conspicuous racial imbalance in a traditionally segregated category. *McNamara*, 867 at 750 (citing *Weber*, 443 U.S. at 209). As the municipal code makes clear, the City arrived at the definition of "minority" after evaluating racial imbalances in construction projects like the casino. *See* MCC 2-92-660. It considered voluminous statistical and anecdotal evidence, testimony by experts, and other evidence, including a report from the Mayoral Task Force on Minority-Owned Businesses and Women-Owned Businesses. *Id.* The classifications set forth in the Bally's IPO are based upon these codified findings, which provide an "adequate factual predicate justifying [their] adoption." *Shea*, 796 F.3d at 57.

The Bally's IPO likewise does not unnecessarily trammel on the rights of others, including Plaintiffs. Not only could Plaintiffs directly invest in the Bally's IPO as members of any entity majority-owned by women or "minorities," but Plaintiffs are in no way restricted from purchasing stock in other Bally's entities, like Bally's Corporation, which have a financial interest in the

---

lockstep. *See Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 403 (7th Cir. 2007), *aff'd*, 553 U.S. 442 (2008) ("[W]e generally have applied the same prima facie requirements to discrimination claims brought under Title VII and section 1981."). This Court can, and should, apply *Johnson* and its progeny here.

Chicago casino project. As discussed above and alleged by the materials incorporated into the Complaint by reference, the structure of the Bally's IPO did not create an absolute bar to the participation of white men, including Plaintiffs. *McNamara*, 867 F. Supp. at 751.

This Court should not indulge Plaintiffs' anti-diversity campaign beyond the pleading stage. Plaintiffs' complaint should be dismissed for failure to state a legally cognizable claim.

## II.     PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 1982

Plaintiffs' Section 1982 claim fails for the same reasons as their Section 1981 claim. Because of their common origin and purpose, Sections 1981 and 1982 are generally construed in tandem, with both claims rising and falling for similar reasons. *Tillman v. Wheaton–Haven Recreation Ass'n, Inc.*, 410 U.S. 431, 440 (1973); *Southend Neighborhood Improvement Ass'n v. Cnty. of St. Clair*, 743 F.2d 1207, 1210–11 (7th Cir. 1984). The but-for causation requirement of *Comcast* applies equally to Section 1982 claims. *James*, 2021 WL 4459508, at *9. Thus, for the same reasons set forth *supra* in Sections I.A. and I.B., Plaintiffs do not allege an intent to discriminate, nor do they allege that race was the but-for cause of any alleged deprivation by Bally's of their right to purchase real property. The Section 1982 claim should be dismissed.

## III.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 1985

Lastly, Plaintiffs allege that Bally's and the City conspired under Section 1985 to violate Plaintiffs' civil rights by "agreeing to prevent white males from owning Class A Interests." Compl. ¶ 99.[12] Like their Section 1981 and 1982 claims, Plaintiffs' fail to plausibly allege the elements of a Section 1985(3) claim—in particular, invidiously discriminatory animus and a conspiratorial agreement. This claim should also be dismissed under Rule 12(b)(6).

---

[12] If Plaintiffs purport to assert derivative claims on behalf of stockholders in some unnamed Bally's entity by alleging that the Bally's IPO is "unlawfully restricting the rights of their future shareholders [and] potentially decreasing the value of shares," Compl. ¶ 105, the complaint plainly fails to allege *any* facts in support of Plaintiffs' standing to bring such a claim, let alone the elements of that cause of action.

Section 1985(3) is a derivative claim that establishes a cause of action "for persons who are victims of a conspiracy to deprive them of the 'equal protection of the laws' or 'equal privileges and immunities under the laws.'" *Milchtein v. Milwaukee Cnty.*, 42 F.4th 814, 827 (7th Cir. 2022) (cleaned up). A viable Section 1985(3) claim "requires a plaintiff to 'plead specific material facts that show the existence of [a conspiratorial] agreement' and 'that, in entering the agreement, Defendants intended to discriminate against Plaintiffs and deprive them of their constitutional rights because of Plaintiffs' race.'" *James*, 2021 WL 4459508, at *12. Mere conclusory allegations of a conspiracy are insufficient. *Winterland Concessions Co. v. Trela*, 735 F.2d 257, 262 (7th Cir. 1984). Rather, Plaintiffs must allege "a single plan, the essential nature and scope of which is known to each person who is held to be responsible for its consequences." *Hoffman-La Roche, Inc. v. Greenberg*, 447 F.2d 872, 875 (7th Cir. 1971).

At the outset, because Section 1985 liability "depends on an underlying violation of the plaintiff's civil rights," Plaintiffs' claim does not survive the multiple dispositive arguments set forth above, each of which independently warrants dismissal of Plaintiffs' Sections 1981 and 1982 claims. *Watson v. C.P.*, No. 23-CV-1270-JPS, 2023 WL 7130292, at *4 (E.D. Wis. Oct. 30, 2023). Without a viable claim for an underlying constitutional or federal statutory violation, Plaintiffs' Section 1985 conspiracy claim stumbles at the threshold and must be dismissed. *Gilbank v. Wood Cnty. Dep't of Human Servs.*, 111 F.4th 754, 789 (7th Cir. 2024).

Even if Plaintiffs had plausibly alleged an underlying Section 1981 or 1982 violation, their pleading nonetheless fails to state a Section 1985(3) claim. Plaintiffs ground their conspiracy allegations entirely on the HCA, which at best establishes an agreement between Bally's and the City to construct and operate a downtown casino.[13] Compl. ¶ 24. Plaintiffs offer no facts from

_____

[13] The HCA was also executed over two years ago, on June 9, 2022. Compl. ¶ 24. Because the HCA is the "last conspiracy-related event described by the complaint," Plaintiffs' Section 1985 claim is time barred.

which this Court can infer that the HCA was entered into "based on a shared common objective of depriving [Plaintiffs] and the class of their right to equal protection of the laws." *James*, 2021 WL 4459508, at *12 (dismissing Section 1985(3) claim where the allegations showed "[a]t most . . . that there was an agreement between the Commission and Evanston to obtain approval for the project by way of the municipal use exemption" and not "a shared common objective of depriving" plaintiff of his constitutional rights). And it is undisputed that the City had no involvement in, and is not a party to, the S-1 or the Bally's IPO. *See* Glennon TRO Order ("Bally's issued the IPO as a private actor."). This is fatal to Plaintiffs' Section 1985 claim.

The complaint likewise fails to articulate the "invidiously discriminatory animus" element required to state a claim under Section 1985(3). As discussed in Section I.A. *supra*, Plaintiffs concede that Bally's undertook the IPO with the intention not to discriminate against Plaintiffs (or anyone else), but rather to comply with the requirements of the Illinois Gambling Act. Compl. ¶ 26. This allegation defeats any plausible inference that Bally's acted "for the purpose of depriving . . . any person or class of persons of the equal protection of the laws." *Milchtein*, 42 F.4th at 827.

For all these reasons, Plaintiffs' Section 1985 claim should be dismissed under Rule 12(b)(6) for failure to state a claim.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' complaint fails to state a claim on which relief can be granted, and it should be dismissed in its entirety.[14]

---

*Yates v. H&M Int'l Transp., Inc.*, No. 18-CV-6001, 2019 WL 2994527, at *6 (N.D. Ill. July 9, 2019) (confirming that the Seventh Circuit applies a two-year statute of limitations to Section 1985 claims).

[14] To the extent that Plaintiffs allege a standalone claim for declaratory judgment, that claim should also be dismissed. *Woods v. Am. Gen. Life Ins. Co.*, No. 22-CV-03893, 2023 WL 3172616, at *9 (N.D. Ill. May 1, 2023) (where substantive claims are dismissed the declaratory judgment claim must likewise be dismissed).

Dated: April 4, 2025

Respectfully submitted,

*/s/ Patricia Brown Holmes*
Patricia Brown Holmes
Ronald S. Safer
Abigail L. Peluso
Lucas T. Rael
**RILEY SAFER HOLMES & CANCILA LLP**
1 S. Dearborn St., Suite 2200
Chicago, IL 60603
(312) 471-8700

*Counsel for Defendants Bally's Chicago Inc.*
*and Bally's Chicago Operating Company*